# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

**JACK THOMAS CURRIE,**

    **Plaintiff,**

**vs.**　　　　　　　　　　　　　　　　　　　　**Case No. 4:05cv287-WS/WCS**

**MONICA DAVID,**

    **Defendant.**

    _____/

## REPORT AND RECOMMENDATION

Plaintiff initiated this civil rights action filed pursuant to 42 U.S.C. § 1983 on August 9, 2005. Doc. 1. Service of Plaintiff's second amended complaint, doc. 14, was directed in late January, 2006, and shortly thereafter, Plaintiff voluntarily dismissed his claims against all Defendants except Monica David. Doc. 26. Plaintiff's claims remain solely against Defendant David as Chairman of the Parole Commission. Doc. 27.

After receipt of Defendant's Answer, which also contains a motion for summary judgment, doc. 33, the *pro se* Plaintiff filed a motion requesting leave to conduct discovery. Doc. 35. Plaintiff was given leave to conduct discovery prior to filing his response. Docs. 36, 39, 42, 45-50. Plaintiff's opposition to the summary judgment motion has been filed, doc. 54, and the motion is ready for a ruling.

**Allegations of the second amended complaint**

Plaintiff alleges that he is serving a parole eligible life sentence for sexual battery and is incarcerated within the Florida Department of Corrections. Doc. 14, p. 7. Plaintiff states that he was a juvenile at the time of that offense, but was charged as an adult and he pleaded guilty to the charge. *Id.* Plaintiff was released on parole on December 17, 1985, but his release was revoked on September 23, 1987. *Id.* On May 5, 1987, Plaintiff was acquitted of the charges which were the basis for the revocation. *Id.* Nevertheless, Plaintiff's parole was revoked and he was returned to prison.

In March of 1988, Plaintiff acknowledges attempting to escape from custody. Doc. 14, p. 7. He was returned to custody on February 16, 1990, and as a result, his previous presumptive parole release date was vacated. *Id.* A new presumptive parole release date was established by the Parole Commission for December, 2017. *Id.* During the next twelve years, Plaintiff had biennial parole consideration hearings. At Plaintiff's parole hearing in 2004, the Commission used a 1997 statutory change to the parole laws to set Plaintiff's next parole hearing five years in the future. *Id.* Plaintiff contends that during the October 13, 2004, parole hearing, Commission Dunphy stated on the record that Plaintiff was a "repeat offender" and Plaintiff asserts that comment was a direct reference to charges for which Plaintiff was acquitted. *Id.*, at 8.

Plaintiff alleges that his due process rights were violated by Defendant's reliance on the circumstances of offenses for which he was acquitted when considering his suitability for parole release. Doc. 14. Furthermore, Plaintiff alleges a violation of both his ex post facto rights and due process when his next parole hearing was set for five years in the future rather than two years. *Id.* Thus, Plaintiff includes in his complaint

allegations that the Commission is wrongfully finding that he has multiple convictions and victims, that he is a "repeat offender," and Plaintiff disputes that there is a "continuing pattern of criminal conduct." *Id.*

**Legal standards governing a motion for summary judgment**

On a motion for summary judgment, the Defendant initially has the burden to demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986). The burden then shifts to the Plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact for trial. *Id.* An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260, *quoting* Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986). All reasonable inferences must be resolved in the light most favorable to the nonmoving party. Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v.

Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

**The relevant Rule 56(e) evidence**

Plaintiff was convicted in June of 1977 in Leon County, Florida, of sexual battery with a firearm in case number 77-211. Doc. 33, p. 4; ex. A. Plaintiff was sentenced to spend the remainder of his natural life in prison for this offense. Doc. 33, ex. A. Plaintiff was additionally convicted of aggravated assault (count III) and resisting an officer with violence (count IV) in case 77-156 and was sentenced to a 3-year term for the assault, and 2-year term for the resisting charge, both of which were concurrent to the life sentence in case 77-211. Doc. 33, p. 4; ex. A.

At Plaintiff's initial parole hearing on March 12, 1980, his presumptive parole release date was established by the Florida Parole Commission as July 12, 2002. Doc. 33, p. 4; ex. B. Throughout the next few years, Plaintiff's presumptive parole release date was reduced and he was released from prison on parole on December 17, 1985. Doc. 54, p. 2.; *see also* doc. 54, ex. F.

Plaintiff's release from prison, however, was not for a very long duration. Plaintiff was arrested on November 15, 1986 and charged with a felony in Dade County, Florida. Doc. 54, p. 2; ex. A. In December, 1986, he was found not guilty of the charge. Doc. 54, ex. A. Nevertheless, following a hearing, the Parole Commission revoked Plaintiff's

parole.  Doc. 54, p. 2.  In particular, after reviewing the evidence from the new criminal charge, the Commission found:

> Parole violation behavior, testimony of victim, investigating detectives, constitutes probable cause that offender sexually assaulted victim while under parole supervision.

Doc. 54, Ex. B.  In other words, although Plaintiff was acquitted of the new criminal charge, the Commission found that he in fact sexually assaulted another victim.  He was returned to prison on May 27, 1987.

After returning to prison, Plaintiff's next parole interview was in October of 1987. Doc. 54, ex. B.  The Parole Commission held a parole consideration hearing on December 23, 1987.  Doc. 54, ex. B.  The Commission added many years to Plaintiff's presumptive parole release date and arrived at a new date of December 11, 2012.  *Id.* The basis for the additional months was for aggravated assault (48 months), resisting an officer with violence (48 months), and (another 180 months) finding that Plaintiff "displayed an inablility [sic] to conform to the norms of society and the rules governing supervision as evidence by his committing a new offense while under the Division of Youth Services and as evidenced by the circumstances surrounding his violation of parole."  *Id.*

On March 18, 1988, Plaintiff escaped from Dade Correctional Institution.  Doc. 54, ex. C-1.  Plaintiff was remanded and returned to Florida custody on March 14, 1990. *Id.*  At the Commission meeting on September 5, 1990, the Commission set Plaintiff's presumptive parole release date for December 11, 2017.  *Id.*  Following Plaintiff's 1992 hearing, the parole hearing examiner recommended reducing his presumptive parole release date by 48 months due to several skills and training accomplishments.  Doc. 54,

ex. C-2.  The Commission rejected the recommendation and made no change to the presumptive parole release date.  *Id.*

At Plaintiff's 1994 hearing, the parole hearing examiner recommended reduction of the presumptive parole release date by 36 months due to "outstanding record of program participation due to completion of vocation courses . . . ."  Doc. 54, ex. C-3.  The Commission decided to reduce the presumptive parole release date by only 12 months.  *Id.*

Plaintiff's 1996 hearing resulted in another recommendation by the parole hearing examiner to reduce Plaintiff's presumptive parole release date by 36 months due to additional certification in vocational skills.  Doc. 54, ex. C-4.  The Commission rejected the recommendation and made no change to the presumptive parole release date, leaving it set for December 11, 2016.  *Id.*  At Plaintiff's next hearing in 1998, the parole hearing examiner recommended leaving the presumptive parole release date intact, and the Commission affirmed that recommendation.  Doc. 54, ex. C-5.

After interviewing Plaintiff in December of 1998, the parole hearing examiner recommended reducing the presumptive parole release date by 18 months due to a "clear record of program involvement" and the successful completion of several programs.  Doc. 54, ex. C-6.  The Commission held a hearing in February of 1999, and decided to reduce the presumptive parole release date by only 12 months.  *Id.*  Plaintiff's subsequent interview was set for just a few months away in December.  *Id.*

Plaintiff was interviewed again on December 16, 1999, and the hearing examiner recommended reducing the presumptive parole release date by 24 months due to an "outstanding record of program participation."  Doc. 54, ex. C-7.  The Commission

affirmed that recommendation at its February 2, 2000, meeting and Plaintiff's presumptive parole release date was established for December 11, 2013. *Id.*

Plaintiff's next interview was December 20, 2000, and the hearing examiner again recommended reducing the presumptive parole release date by 24 months because Plaintiff's "institutional conduct ha[d] been above satisfactory . . . ." Doc. 54, ex. C-8. The Commission rejected the recommendation and left the presumptive parole release date set at December 11, 2013. *Id.*

Although the parole hearing examiner found Plaintiff's institutional conduct "unsatisfactory" because of two disciplinary reports, it was recommended that the presumptive parole release date be extended by 6 months. Doc. 54, ex. C-9. The Commission rejected that recommendation at its December 18, 2002, meeting and Plaintiff's presumptive parole release date was extended by 12 months. *Id.* Plaintiff's new presumptive parole release date was set for December 11, 2014, and his next biennial hearing was scheduled for August of 2004. Doc. 33, p. 4; ex. C; doc. 54, ex. C-9. The basis for the Commission's extension was Plaintiff's receipt of a disciplinary report for possession of contraband on October 18, 2001, (resulting in the loss of 30 days gain time) and for disobeying a verbal or written order on March 16, 2002, (also (resulting in the loss of 30 days gain time). Doc. 33, ex. C; doc. 54, ex. C-9

During the October 13, 2004, parole hearing, the presumptive parole release date was left as set for December 11, 2014. Doc. 54, ex. C-10. The Commission then established a five-year parole interview schedule pursuant to FLA. STAT. § 947.174(b). Doc. 33, p. 4; ex. D. The Commission based the five-year interview schedule rather than the previously utilized two-year interview schedule on the finding that it was "not

reasonable to expect that [Plaintiff would] be granted parole during the following years." Doc. 33, ex. D. Supporting that finding were the following factors: (1) trauma to the victims; (2) multiple victims; (3) deadly weapon or firearm was used; (4) any release would put the public at risk; (5) continuing pattern of criminal conduct; and (6) unsatisfactory institutional conduct. Doc. 33, p. 4; ex. D. Thus, Plaintiff is not scheduled to have his next parole interview until June, 2009. Doc. 33, ex. D.

**Defendant's Argument**

Defendant contends that because an inmate in Florida has no right to parole, Plaintiff may not claim the protection of the Due Process Clause and, consequently, his due process claims must fail. Doc. 33, p. 5. Furthermore, Defendant argues that Plaintiff's ex post facto claim is foreclosed by Eleventh Circuit and Supreme Court case law. *Id.*, at 15.

**Due Process claims**

Plaintiff contends that the Parole Commission improperly has considered the circumstances of events that took place while he was on parole release. Doc. 54, p. 5. Plaintiff states that the Commission has considered the "elements of charges" for which he was acquitted in considering his "eligibility and suitability" for parole release again. *Id.*

To the extent that Plaintiff's complaint generally challenges the parole decision process or guidelines by which Defendants decide who is entitled to parole and who should be denied parole, this argument was long ago settled in the Eleventh Circuit. Florida's parole system leaves the decision of whether or not to grant parole "to the discretion of the [Parole] Commission . . . ." Jonas v. Wainwright, 779 F.2d 1576, 1577

(11th Cir.), *cert. denied*, 479 U.S. 830 (1986), *citing* Moore v. Florida Parole & Probation Comm'n, 289 So. 2d 719 (Fla. 1974).  "There is no constitutional right to parole in Florida."  Jonas, 779 F.2d at 1577, *citing* Hunter v. Florida Parole & Probation Comm'n, 674 So. 2d 847, 848 (11th Cir. 1982).[1]  In Hunter v. Florida Parole & Probation Commission, the Court rejected a claim that the Commission improperly calculated a presumptive parole release date and, thus, violated due process, holding that because there was no liberty interested in parole, there was no due process violation.  Hunter, 674 F.2d at 848.

As to the more particular due process claim that the Commission improperly considered evidence of commission of a crime for which Plaintiff was acquitted, that claim is also foreclosed by clearly established law.  As recognized by the United States Supreme Court, "the State has an overwhelming interest in being able to return the individual [parolee] to prison without the burden of a new . . . criminal trial."  Morrissey v. Brewer, 408 U.S. 471, 495, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).  The Parole Commission may consider all of Plaintiff's behavior in determining whether or not Plaintiff should be released on parole, and when that release should take place.  The Commission is entitled to consider Plaintiff's actions on his prior parole release, whether or not there was sufficient evidence to sustain a new conviction for such behavior.

> Even an acquittal in a criminal case does not preclude a Commission's determination that a revocation should occur based on the same conduct. *Cavalcante v. Fla. Parole & Probation Comm'n*, 414 So.2d 658 (Fla. 1st DCA 1982); *Rock v. State*, 584 So.2d 1110 (Fla. 1st DCA 1991).

---

[1] "It is the intent of the Legislature that the decision to parole an inmate from the incarceration portion of the inmate's sentence is an act of grace of the state and shall not be considered a right."  FLA. STAT. § 947.002(5).

Harris v. Florida Parole Com'n, 917 So.2d 217, 218 (Fla. 1st DCA, 2005).  Plaintiff's due process claims fail as a matter of law.

Additionally, the evidence here does not suggest that Plaintiff was wrongfully returned to prison or that the evidence was insufficient to support the Commission's decision to revoke Plaintiff's parole.  In Monroe v. Thigpen, 932 F.2d 1437 (11th Cir. 1991), the court found that a state parole board's admitted use of false information was arbitrary and capricious and, thus, constituted a violation of the Due Process Clause. Monroe, 932 F.2d at 1442 (holding that the discretion given to the Alabama Parole Board in granting parole does not permit the Board to knowingly relying on false information contained in an inmate's file to deny him parole), *relying on* Thomas v. Sellers, 691 F.2d 487, 489 (11th Cir. 1982) (stressing that "absent flagrant or unauthorized action by a parole board the discretionary power vested in a parole board will not be interfered with by the Federal courts."); Damiano v. Florida Parole and Probation Comm'n, 785 F.2d 929, 932 (11th Cir. 1986)(finding that the inmate "raised a colorable due process claim with respect to the use of procedurally flawed disciplinary reports in modifying a PPRD.").  In this case, Plaintiff has not alleged that the Defendant is knowingly and intentionally using false information.  Indeed, Plaintiff has not even made a showing that the evidence that he sexually assaulted another person while on parole was false.[2]  His allegations do fit within the holding of Monroe.

---

[2] Plaintiff's response in opposition makes the broad assertion that the Commission has used "erroneous information" but this argument is simply based on the fact that Plaintiff was acquitted.  Doc. 54, p. 8.  An acquittal does not mean false evidence has been considered.

Plaintiff is not challenging the parole revocation process at all. Nor could Plaintiff make such a challenge in this civil rights case as those events would be barred by the statute of limitations and because a civil rights action may not be used to seek release from prison. Because there is no demonstration that the evidence considered was false or erroneous, Defendant is entitled to summary judgment in her favor on all of Plaintiff's due process claims.

**Ex Post Facto claims**

Challenges to the Commission's discretion have also been raised as ex post facto claims. In Paschal v. Wainwright, 738 F.2d 1173 (11th Cir. 1984), the court considered an ex post facto challenge to the 1978 Parole Act which changed the manner in which the Commission exercises its discretion. The court held that both before and after the 1978 Act,[3] the decision about whether or not to grant parole was within the ultimate discretion of the Parole Commission. Paschal, 738 F.2d at 1179-80. It is clear within this Circuit that procedural changes in how the Commission exercises its discretion is not an ex post facto violation as Paschal has been consistently followed. *See* Damiano v. Florida Parole and Probation Commission, 785 F.2d 929, 933 (11th Cir.1986); Johnson v. Wainwright, 772 F.2d 826, 827 (11th Cir. 1985); Jones v. Georgia State Bd. of Pardons and Paroles, 59 F.3d 1145, 1150 (11th Cir. 1995). Johnson discussed the holding in Paschal as follows:

> The guidelines have clarified the commission's exercise of its discretion. The commission has created a system by which it attempts to use its discretion in a more uniform manner than previously. The substantive

---

[3] Before the change, decisions were made on an "ad hoc basis," and afterwards, "objective guidelines" were utilized. Paschal, 738 F.2d at 1178.

power of the commission remains unchanged; only the manner in which it exercises this power has been altered.

Johnson, 772 F.2d at 827, *citing* Paschal, at 1179.

Accordingly, a change that merely alters the Parole Commission's determination of an inmate's parole suitability does not violate the Ex Post Facto Clause because it neither works to an inmate's detriment nor constitutes "a criminal or penal law." Kelly v. Southerland, 967 F.2d 1531, 1532 (11th Cir. 1992), *citing* Dufresne v. Baer, 744 F.2d 1543, 1547 (11th Cir. 1984), *cert. denied*, 474 U.S. 817 (1985). Guidelines are just that, guidelines for making decisions and reining in discretion. Paschal, 738 F.2d at 1181; Kelly, 967 F.2d at 1532. Thus, Plaintiff's claim regarding the factors and events considered by the Commission in determining his eligibility and suitability for parole is not a viable claim. Summary judgment should be entered in favor of the Defendant on this claim as well.

That leaves only Plaintiff's ex post facto claim concerning the 5-year delay in parole hearings.[4] This claim is controlled by California Dep't of Corrections v. Morales, 514 U.S. 499, 509, 115 S. Ct. 1597, 1603, 131 L. Ed. 2d 588 (1995); Lynce v. Mathis, 519 U.S. 433, 441, 117 S. Ct. 891, 895, 137 L. Ed. 2d 63 (1997); Garner v. Jones, 529 U.S. 244, 120 S. Ct. 1362, 146 L. Ed. 2d 236 (2000), *reversing* 164 F.3d 589 (11th Cir. 1999); and Tuff v. State, 732 So. 2d 461 (Fla. 3d DCA 1999). The Supreme Court's reversal of the Eleventh Circuit's opinion in Jones v. Garner, a case which considered an ex post facto claim to a Georgia parole regulation, is helpful in analyzing the Florida

---

[4] While Damiano and Paschal held there was no ex post facto violation in considering Florida's 1979 parole statute, the specific issue contested was the objective parole guidelines used to determine whether the prisoner should be granted parole. These cases did not discuss the delay or timing of hearings.

statute at issue here.  Yet, ultimately, the Court's opinion in Garner does not mandate the outcome of this case, nor does it alter the framework set out in Morales for analysis of this claim.[5]

To violate the Ex Post Facto Clause, a new statute must inflict "a greater punishment, than the law annexed to the crime, when committed."  Lynce, 519 U.S. at 441, 117 S. Ct. at 895, *quoting*, Calder v. Bull, 3 Dall. 386, 390, 1 L. Ed. 648 (1798).  An ex post facto law must (1) "apply to events occurring before its enactment" and (2) "disadvantage the offender affected by it" by "altering the definition of criminal conduct or increasing the punishment for the crime."  *Id.*, 519 U.S. at 441, 117 S. Ct. at 896, *quoting* Collins v. Youngblood, 497 U.S. 37, 50, 110 S. Ct. 2715, 2723, 111 L. Ed. 2d 30 (1990).  The issue is "whether [the new law] produces a sufficient risk of increasing the measure of punishment attached to the covered crimes."  Morales, 514 U.S. at 509, 115 S. Ct. at 1603.  Analysis of this question should consider only objective considerations, Lynce, 519 U.S. at 443, 117 S. Ct. at 443, and is a question of degree.  Morales, 514 U.S. at 509, 115 S. Ct. at 1603 (citation omitted).

It is undisputed that the 1997 statute was retrospectively applied to Plaintiff at his parole hearing in 2004, as his original crime was committed in 1977.  The issue to be considered here is whether the 1997 law created "a sufficient risk of increasing the measure of punishment attached to the covered crimes."  As recast by Morales, "[i]f a delay in parole hearings raises ex post facto concerns, it is because that delay

---

[5] The Garner Court reversed and remanded the case with instructions to consider the inmate's claim that he had "not been permitted sufficient discovery to make" the required showing that the Georgia regulation had a significant risk of increased punishment.  Plaintiff was given leave to conduct discovery in this case.

*effectively increases* a prisoner's term of confinement . . . ." Morales, 514 U.S. at 509, n. 4, 115 S. Ct. at 1603, n. 4 (emphasis added).

In 1997, the parole statutes were amended. As is applicable to Plaintiff, the statute provides:

> For any inmate convicted of murder, attempted murder, sexual battery, attempted sexual battery, or who has been sentenced to a 25-year minimum mandatory sentence previously provided in s. 775.082, and whose presumptive parole release date is more than 5 years after the date of the initial interview, a hearing examiner shall schedule an interview for review of the presumptive parole release date. Such interview shall take place once within 5 years after the initial interview and once every 5 years thereafter if the commission finds that it is not reasonable to expect that parole will be granted at a hearing during the following years and states the bases for the finding in writing. For any inmate who is within 7 years of his or her tentative release date, the commission may establish an interview date prior to the 5-year schedule.

FLA. STAT. § 947.174(1)(b) (1997). The statute still allows the Commission to request a subsequent hearing at any time. FLA. STAT. § 947.174(4) (1997). Plaintiff's initial conviction for sexual battery with a firearm brings him within the terms of the statute.

The California parole regulations considered in Morales made prisoners eligible for annual reconsideration if parole was denied at the initial parole consideration hearing. 514 U.S. at 503, 115 S. Ct. 1597. The legislature amended the regulation to "defer subsequent suitability hearings for up to three years if the prisoner has been convicted of 'more than one offense which involves the taking of a life' and if the Board 'finds that it is not reasonable to expect that parole would be granted at a hearing during the following [two] years and states the bases for the findings.' " 514 U.S. at 503, 115 S. Ct. at 1600. The Supreme Court found it significant that the amended statute applied "only to a class of prisoners for whom the likelihood of release on parole [was] quite

remote." 514 U.S. at 510, 115 S. Ct. at 1603. It also found that the law was "carefully tailored" because (1) it had no effect on the date of a prisoner's initial parole suitability hearing, affecting only the timing of subsequent hearings; (2) inmates were given a full hearing as to whether it was "not reasonable to expect that parole would be granted at a hearing during the following years;" (3) the parole board had to state its findings on that question in writing; and (4) the board still had discretion to alter the frequency of parole hearings. 514 U.S. at 511-512, 115 S. Ct. at 1604. From this the Court concluded:

> In light of the particularized findings required under the amendment and the broad discretion given to the Board, the narrow class of prisoners covered by the amendment cannot reasonably expect that their prospects for early release on parole would be enhanced by the opportunity of annual hearings.

514 U.S. at 512, 115 S. Ct. at 1604. The Court determined that the new law "create[d] only the most speculative and attenuated risk of increasing the measure of punishment attached to the covered crimes," 514 U.S. at 514, 115 S. Ct. at 1605, and, thus, did not violate the Ex Post Facto Clause.

In Jones, the Eleventh Circuit examined a Georgia parole regulation which altered the time between paroles reconsideration from every three years to once every eight years for prisoners serving life sentences. The Eleventh Circuit concluded that the retroactive application of this regulation constituted an ex post facto violation. 164 F.3d at 590. In so finding, the court noted that the Georgia regulation applied to a much broader range of inmates than was the case in Morales. 164 F.3d at 593-594. The court was "unable to conclude that [the Georgia regulation] will apply 'only to a class of prisoners for whom the likelihood of release on parole is quite remote.' " Id. The court also noted the lack of safeguards which would indicate the regulation was carefully

tailored to relieve the board of the time-consuming process of denying parole to those who would not be paroled in the interim. *Id.* at 594. The Georgia regulation did not require any sort of hearing as to whether it was reasonable to expect that parole would be granted during the intervening eight years, and required no findings on this question. *Id.*, at 594-595.

In reversing Jones, however, the Supreme Court noted that Morales demands a "more rigorous analysis of the level of risk created by the change in law." Garner v. Jones, 120 S. Ct. at 1370. It held that the Court of Appeals had "little information bearing on the level of risk" and that absent such knowledge, the claim was speculative. *Id.,* at 1371-72.

In this case, however, the evidence reveals that the Florida statute is much more like the statute in Morales, and differs significantly from the Georgia regulation. As noted in a state court challenge to the 1997 version of the statute at issue here, § 947.174, the Florida statute "affords the procedural safeguards mentioned in *Morales.*" Tuff, 732 So. 2d at 463.[6] Tuff is a thorough, well-reasoned decision, and its holding should guide this court in considering whether a five year delay in parole hearings violates the Ex Post Facto Clause.

While the statute applies to a broader category of inmates than was the case in Morales, there is no inherent risk that an inmate's incarceration will be extended. *See* Garner, 120 S. Ct. at 1368. In setting subsequent parole hearings and establishing a

---

[6] While Tuff also determined that the regulation "applies only to a limited class of prisoners" unlike the Eleventh Circuit's opinion in Jones, the Supreme Court noted that the number of prisoners affected by the change in law was "not dispositive" of the issue. Garner, 120 S. Ct. at 1368. "The question is whether the amended [] Rule creates a significant risk of prolonging [an inmate's] incarceration." *Id.*

presumptive parole release date, the Commission has considered the particular inmate's criminal history, institutional adjustment, and conduct during his previous release on parole. In considering all of those facts, the Commission makes the determination that the inmate is not suitable for release within the time period between parole hearings. FLA. STAT. § 947.174(3). It is highly unlikely that Plaintiff would be paroled within this time since his presumptive parole release date is not even until 2014.

Additionally, Plaintiff was afforded a parole interview and then the full Parole Commission held a hearing before making a decision about granted or denying parole, and in setting a new hearing date. When the Commission determined that Plaintiff should not be released on parole, it stated that it was "not reasonable to expect that parole will be granted at a hearing during the following [five] years" and explained its basis for this finding in writing. FLA. STAT. § 947.174(1)(b); doc. 54, ex. C-10.

Plaintiff challenges the stated reasons, the reasons relied upon have support in the record. Even though Plaintiff was not convicted of the crime charged while he was on parole release, the evidence demonstrates that was convicted of three separate offenses previously (sexual battery, aggravated assault, resisting an officer with violence). Plaintiff also escaped from custody in 1988. Plaintiff has had more than one victim, trauma is an inherent part of aggravated assault, resisting with violence, and sexual battery, and Plaintiff did use a weapon in the sexual battery. Furthermore, based on the fact that Plaintiff engaged in conduct which resulted in being charged with a felony, it was reasonable to conclude Plaintiff's release could pose a risk to the public. Furthermore, Plaintiff was given a chance at freedom and violated the terms of his parole. Plaintiff also was convicted of escape. Finally, Plaintiff received several

disciplinary reports in the months leading up to the 2002 parole review, supporting the finding of unsatisfactory institutional conduct. This is evidence to support the finding that Plaintiff has demonstrated a continuing pattern of criminal conduct.

Also note worthy is the fact that the Commission has discretion to establish a hearing date earlier than five years. FLA. STAT. § 947.174(2). This kind of discretion was an important consideration for the Court in Garner. The Court acknowledged that "the Board's policies permit 'expedited parole reviews in the event of a change in their circumstance or where the Board receives new information that would warrant a sooner review.' " Garner, 120 S. Ct. at 1369. The Court pointed out that in Morales, it "relied upon the State's representation that its parole board had a practice of granting inmates' requests for early review." 120 S. Ct. at 1371. Because Georgia's policies also permitted an earlier review, and "[a]bsent any demonstration to the contrary," the Court accepted "that inmates, upon making a showing of a 'change in their circumstance[s]' or upon the Board's receipt of 'new information,' may request expedited consideration." Id. Because the 1997 parole statute maintains the Florida Parole Commission's discretion to alter the timing of parole hearings, and because an inmate may request review of his presumptive parole release date, there does not appear to be a significant risk that Plaintiff's measure of punishment has been increased.

In summary, Plaintiff's parole hearing has been set in accordance with the statute and based on a finding that Plaintiff would not be granted parole in the interim period. The statute does not have an effect on the date of a prisoner's parole, but affects only the timing of subsequent hearings. Defendant is entitled to consider all of Plaintiff's criminal history and conduct, whether or not it resulted in a criminal conviction, when

setting Plaintiff's future parole hearings. There has been no showing that Plaintiff faces a substantial risk that his measure of punishment has been increased by the retroactive application of § 947.174. Thus, the Ex Post Facto Clause has not been violated.

Consequently, it is respectfully **RECOMMENDED** that Defendant's motion to summary judgment, doc. 33, be **GRANTED** on all of Plaintiff's claims, and the judgment be entered in favor of the Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on May 4, 2007.

    s/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**